## Ammerman *versus* The Wyoming Canal Co.

*Private Bridges, action against Canal Company for refusing to Repair.*

1. Under the Act 21st April 1858, providing for the sale of the state canals, the Wyoming Canal Company, as "the assigns" of the Sunbury and Erie Railroad Company, were bound to keep in repair a private bridge crossing the North Branch Canal, as had been done by the commonwealth, who built the bridge for the owner of the farm when the canal was made; subsequently, the Lackawanna and Bloomsburg Railroad Company, duly authorized by law, built their road on the banks of the canal where the bridge crossed, and so altered it in height and length as to increase the cost of keeping it in repair; the bridge becoming unsafe, the canal company refused to repair, whereupon suit was brought by the owner of the farm. *Held*, that the canal company was not relieved from its obligation to keep the bridge in repair, by any acts of the railroad company in the location or construction of their road, and that it was error in the court below to instruct the jury, that the railroad company had by their acts released the canal company from any obligations to repair the bridge.

2. The owner of the farm for whose use the bridge was built, can maintain an action against the canal company for neglecting to repair it, even though the railroad company might be liable to keep it up, and might also be responsible in damages to the canal company for injury done, requiring greater care and expense in keeping the bridge in repair.

ERROR to the Common Pleas of *Montour county.*

This was an action on the case, brought September 7th 1860, by Jesse C. Ammerman against "The Wyoming Canal Company," for refusing to repair a private bridge over the canal. The material facts of the case are as follows :—

The Commonwealth of Pennsylvania, having constructed the North Branch Canal through the tract of land now owned by the plaintiff in error, built on the premises a bridge over the canal with an abutment and the necessary embankment on each side, for the use and accommodation of the owners of the said farm. This bridge, with its embankments, was kept in repair by the commonwealth until the governor, under the provisions of the " Act for the sale of the state canals," passed 21st of April 1858, assigned and transferred the canal to the Sunbury

[Ammerman *v.* Wyoming Canal Co.]

and Erie Railroad Company. In the 5th section of this act it is enacted that "the Sunbury and Erie Railroad Company, or their assigns, immediately after taking possession of the said canals, shall be bound to keep up the same, including public and private bridges crossing the said canals, as heretofore done by the canal commissioners, *in as good repair and operating condition as they now are.*" The Wyoming Canal Company subsequently became the owner of that part of the canal which passes through the plaintiff's farm, and took possession of the same. By an Act of Assembly passed 5th April 1852 and a supplement thereto passed 3d March 1853, the Lackawanna and Bloomsburg Railroad Company was incorporated "with all the powers and subject to all provisions and restrictions prescribed by an act, entitled an Act regulating Railroad Companies, approved the nineteenth day of February, one thousand eight hundred and forty-nine," and were authorized to build and construct a railroad from Scranton, in Luzerne county, to connect with the Sunbury and Erie Railroad Company or the Susquehanna Railroad Company, at the town of Sunbury or northward thereof, at any point in the counties of Northumberland and Lycoming. By another supplement, passed 5th April 1855, the railroad company was authorized, "with the assent and under the direction of the supervisor of the North Branch Canal, to locate their road at certain points thereof upon the berme bank of said canal," &c. The railroad company constructed their road from Scranton to connect with the Sunbury and Erie Railroad at the town of Northumberland, but it was after the commonwealth had parted with her canals and the defendant became the owner of the part now in their possession, that the railroad company located and built their road through the plaintiff's land upon the berme bank of the canal, and in doing so tore down the superstructure of the canal bridge, took away the embankment and the wing walls of the abutment on the north side, converted it into a pier, and added seven and a half feet to its height—raised the abutment on the south side four and a quarter feet higher—increased the width of the base of the embankment and raised it to correspond with the increased height of the abutment, thereby making the embankment steeper and three feet narrower on the top. They then reconstructed the superstructure over the canal with the old material at this increased elevation, and with other materials, and extended the bridge forty-nine feet over the railroad by two trestles to a new embankment made by them on the north side. The railroad company are required, by the 12th section of the Act of 19th February 1849, "for the accommodation of all persons owning or possessing land through which the said railroad may pass, to make or cause to be made a good and sufficient causeway or causeways, whenever the same may be necessary to

4 WR.—17

enable the occupant or occupants of the said land to cross or pass over the same, with wagons, carts, and implements of husbandry, as occasion may require, and the said causeway or causeways, when so made," to "maintain and keep in good repair." The alteration, extension, and elevation of the bridge was rendered necessary by the railroad company locating their road as above stated.

The canal company gave notice to the plaintiff, that if any alteration was made on the bridge by the railroad company, with his consent, they would consider themselves released from their liability to keep it in repair, and plaintiff gave notice to the railroad company that they could *not* make any alteration with his consent.

The bridge afterwards becoming unsafe, the plaintiff notified the Wyoming Canal Company to repair it, and on their refusing to do so, brought this action.

The plaintiff's declaration set forth all the foregoing facts, to which the defendant pleaded not guilty.

On the trial, the plaintiff requested the court to charge the jury, that the Wyoming Canal Company, as vendees or assigns, claiming under the vendee of the commonwealth, became, by the purchase of the North Branch Division of the Pennsylvania Canal, liable to keep up this private bridge on the land of Jesse C. Ammerman (as well as all other public and private bridges crossing said canal) as the same had been theretofore done by the canal commissioners, in as good repair and operating condition as it was at the time of the sale of said canal by the commonwealth, for the benefit and convenience of said Jesse C. Ammerman, the then and present owner of the land, and that no act of the Lackawanna and Bloomsburg Railroad Company, done without the consent of said plaintiff, can release the defendants from their liability; and that under the evidence in this case the plaintiff is entitled to recover damages.

The court below answered both these points in the negative, and instructed the jury that the bridge must be kept in repair by the Lackawanna and Bloomsburg Railroad Company, and not by the Wyoming Canal Company; that the railroad company had by their acts taken the bridge out of the control of the canal company, and have released the canal company from their obligation to keep it in repair.

There was a verdict and judgment in favour of the defendant, whereupon the plaintiff sued out this writ, and assigned for error here the charge of the court as above stated.

*Paul Leidy*, for plaintiff, argued that the liability of the canal company to keep the bridge in repair was fixed by the Act of April 21st 1858, above cited, which imposed this duty on the

Sunbury and Erie Railroad Company *and their assigns,* which position it was conceded the Wyoming Canal Company occupied. That, being thus bound, the company could not absolve themselves from this obligation. The plaintiff did not do so; and these were the sole parties to the contract.

That by altering the bridge, the railroad company could not destroy this obligation between the plaintiff and the canal company, and that if the canal company permitted them to locate their railroad in such a way as to increase the cost of keeping up the bridge, without protecting themselves by requiring the railroad company to defray the additional expenses, they must take the consequences.

*Joshua W. Comly,* for defendant, contended that the bridge which the defendant was " bound to repair" had been destroyed by the railroad company under the power granted in the charter, and a new structure rendered necessary, which the canal company had nothing to do with, but which the railroad company was bound to erect and keep in repair. By building it, the company confessed their liability to maintain it : citing The Union Canal Company *v.* Pine Grove Township, 6 W. & S. 564; 2 Bac. Abr. 124.

The canal company did not consent to this location of the railroad : they had no power to prevent it, but they did notify the plaintiff not to consent to it.

The opinion of the court was delivered, October 31st 1861, by

THOMPSON, J.—It was not denied, that, as assignees or transferees of the Sunbury and Erie Railroad Company, the defendants were bound to keep up all public and private bridges across the canal, as heretofore had been done by the commonwealth : Act of 21st April 1858, P. L. 417. For a failure to repair the farm bridge on plaintiff's land, this suit, after notice to repair it, was brought, and it was agreed on the trial below that repairs to the extent of $10 were required at the time, and that this was the amount of the damages to be assessed, if plaintiff was entitled to recover. Certainly to all appearance this would seem to present a very clear case of liability on part of the defendants to the plaintiff.

But the defendants contend, notwithstanding, against liability, because that the Lackawanna and Bloomsburg Railroad Company have, by virtue of their charter, located their road on the berme bank of the canal, and that this increases the magnitude and expense of keeping up the bridge over the canal, and that therefore they, the railroad company, are answerable to the plaintiff under the provisions of the General Railroad Act of 19th February 1849, for not keeping up proper causeways over their road.

[Ammerman *v.* Wyoming Canal Co.]

But that is not the question here; it is the bridge over the canal that is in this controversy, and this the defendants are expressly bound to keep up. If the railroad company have injured the canal company in regard to it or increased their responsibility and expenses in keeping it in repair, the law must be very lame if it will not require them to make compensation, as it would be bound to do to any other proprietor whose property might be taken or injured by it. We have not that company before us, however; but we can see that it is possible for it to be answerable also to the plaintiff under its charter; but if it were this would not destroy the plaintiff's right to hold the canal company to its obligation. A man may have several parties bound to the performance of duties and obligations to him, and there being several so bound does not relieve either until satisfaction from some one is made. The assignments of error all relate to the same thing and are sustained. It was an error to charge that the canal company was not liable to repair the bridge in question, and the judgment must be reversed; but as the amount of the damages was agreed upon, if the plaintiff was entitled to recover, we will enter judgment now for that sum instead of putting the parties to a new trial.

And now, to wit, October 30th 1861, judgment of the Common Pleas of Montour county in this case is reversed, and judgment is entered for the plaintiff for ten dollars damages with costs, and the costs of this writ of error.